# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LUCAS STROHMENGER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUALITY HUTS, LLC; QUALITY HUTS INDIANAPOLIS LLC; QUALITY HUTS MIDWEST LLC; and DOES 1 to 10,<br><br>Defendants. | Case No. 1-21-cv-1662<br><br>**NATIONWIDE CLASS ACTION COMPLAINT** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff LUCAS STROHMENGER ("Plaintiff"), on behalf of himself and all others similarly situated, and asserts as follows:

## INTRODUCTION

1. Plaintiff is a person with a mobility disability stemming from a spinal cord injury that has caused him to use a wheelchair for mobility.

2. Defendants QUALITY HUTS, LLC, QUALITY HUTS INDIANAPOLIS LLC, QUALITY HUTS MIDWEST LLC, and DOES 1 through 10 (collectively, "Defendants") collectively own, lease, and/or operate at least one hundred seventy two (172) Pizza Hut restaurants in the states of Indiana, Illinois, Pennsylvania, and Maryland. The Pizza Hut locations Defendants operate includes the location Plaintiff encountered, as described in more detail below.

3. Plaintiff brings this action individually and on behalf of all others similarly situated against Defendants, asserting violations of Title III of the Americans with Disabilities Act, 42

U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations, arising from accessibility barriers, specifically excessive sloping in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities").

4. Defendants discriminate against Plaintiff – and other similarly situated mobility impaired persons – by violating the ADA's accessibility guidelines in a manner that routinely results in access barriers at Defendants' facilities. Specifically, Plaintiff experienced difficulty and risk of harm navigating the parking lot and accessible route to Defendants' business due to excessive sloping, all in violation of the ADA. Plaintiff separately and additionally asserts that those access barriers exist and persist due to Defendants' discriminatory and inadequate existing policies, practices, or procedures that lead to, as in the case of Defendants' parking lots, a systemic failure to maintain accessibility features within the Parking Areas of those facilities.

5. Numerous facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision-making Defendants employ with regard to the construction, alteration, maintenance, and operation of their facilities causes access barriers and/or allows them to develop and persist at Defendants' facilities.

6. Plaintiff brings this action individually and on behalf of all others similarly situated to compel Defendants to cease unlawful discriminatory practices and to remediate all access barriers within the Parking Areas of their facilities. Doing so will ensure Plaintiff's full and equal enjoyment, and a meaningful opportunity to participate in and benefit from, Defendants' goods and services. Plaintiff seeks declaratory injunctive, equitable relief, attorneys' fees and costs to

redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and its implementing regulations.

7. Unless Defendants are required to remove the access barriers described below, and/or are required to make reasonable modifications to their existing policies, practices, or procedures so that access barriers do not reoccur at Defendants' facilities, Plaintiff and the proposed Class will continue to be denied full and equal access to those facilities as described and will be deterred from fully using Defendants' facilities so long as Defendants' unlawful discriminatory practices continue.

8. Defendants' ongoing discrimination sends a message that it is acceptable for public accommodations to allow access barriers to persist that deprive mobility impaired individuals of the opportunity to full and equal enjoyment of, and meaningful opportunity to participate in and benefit from, Defendants' goods and services.

9. The ADA expressly authorizes the injunctive relief aimed at modification of existing policies, practices, or procedures that Plaintiff seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…

42 U.S.C. § 12188(a)(2).

10. Pursuant to the ADA, it is mandatory that Defendants make reasonable modifications to their existing policies, practices, or procedures to afford their goods, services, facilities, privileges, advantages, or their accommodations to individuals with disabilities, and it is unlawful discrimination for Defendants to fail to make such modifications. 42 U.S.C. 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a). On additional and alternate grounds, Plaintiff further

3

seeks to compel Defendants to reasonably modify their existing policies, practices, or procedures to ensure their facilities remain in compliance with the ADA's parking space, ramp, and curb ramp regulations.

11. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a. Defendants remediate all access barriers within the Parking Areas at Defendant's facilities, consistent with the ADA;

   b. Defendants modify their existing policies, practices, or procedures so that the access barriers within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 11.a. and 11.b. has been implemented and will remain in place.

12. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

13. Plaintiff Lucas Strohmenger is, and at all times relevant hereto was, a resident of Camby, Indiana. Plaintiff is a person with a mobility disability stemming from a car accident in

1999 which resulted in a L2 spinal injury. As a result of his disability, Plaintiff uses a wheelchair for mobility. Despite his significant injuries, Mr. Strohmenger likes to stay active and often travels to different areas around the state.

14. Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

15. Defendant QUALITY HUTS, LLC is, and at all relevant times was a Delaware Corporation, *not* qualified but doing business in the State of Indiana as the owner, lessee, and/or operator of dozens of Pizza Hut restaurants in this state and others.

16. Defendant QUALITY HUTS INDIANAPOLIS LLC is, and at all relevant times was a Delaware Corporation, doing business in the State of Indiana as the owner, lessee, and/or operator of dozens of Pizza Hut restaurants in the state.

17. Defendant QUALITY HUTS MIDWEST LLC is, and at all relevant times was a Delaware Corporation, doing business in the State of Indiana as the owner, lessee, and/or operator of dozens of Pizza Hut restaurants in this state and in the state of Illinois.

18. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 10, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to assert their true names and capacities when known. Plaintiff is informed and believes and thereon alleges that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

19. Plaintiff asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint, were the alter egos, affiliates, managers, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single Franchise Group, and in doing the things alleged

in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

20. Plaintiff is further informed and believes, and based thereon alleges that Defendants collectively own, lease, and/or operate fifty-six (56) Pizza Huts doing business in the state of Indiana, forty-four (44) Pizza Huts doing business in the state of Illinois, thirty-five (35) Pizza Huts doing business in the state of Pennsylvania, and thirty-seven (37) Pizza Huts doing business in the state of Maryland, as described herein. .

21. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

**FACTUAL ASSERTIONS**

**Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities**

22. Plaintiff visited Defendants' facilities located at 8932 E 38th Street, Indianapolis, Indiana, on April 12, 2021, where he experienced unnecessary difficulty and risk of physical harm exiting and entering his vehicle, and navigating the facilities, such that extra care was needed to avoid falling and to safely traverse the area, due to excessive slopes in a purportedly accessible Parking Area and other ADA accessibility violations as set forth in more detail below.

23. Despite this difficulty and risk, Plaintiff plans to return to Defendant's facilities. Plaintiff often travels to the area for a variety of reasons, and he likes to stop for Pizza Hut due to his preference for their breadsticks. On April 12, 2021, Mr. Strohmenger traveled to the area to visit a German café that sells traditional German food products. Plaintiff regularly travels to this café as their home-made products are traditional German food that is not available elsewhere. Plaintiff will be visiting the area within the next few months to pick up the specialized foods and

plans to dine at Defendants' E. 38th Street facility. Plaintiff also visits the area to spend time in the Fort Harrison Park, where he likes to go horseback riding and visit the local breweries. Furthermore, Plaintiff intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

24. As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded. Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination he has previously encountered there. Defendants' discriminatory conduct will continue so long as their facilities remain non-compliant with the ADA's requirements. Additionally, Plaintiff alleges those violations presently exist and persist due to Defendants' inadequate policies, practices, or procedures that have led, and in the future will lead, to a systemic failure to maintain ADA required accessibility features at Defendants' facilities.

25. Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendants' facilities, and will continue to experience unlawful discrimination on the basis of his disability by being denied access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of Defendant's facilities, in violation of his civil rights under the ADA.

26. As an individual with a mobility disability who uses a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' facilities, have adequate, reasonable, and non-discriminatory policies, practices, or procedures that will lead to both the maintenance of ADA-required accessibility features at Defendants' facilities, and remediation of architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

**Defendants Repeatedly Deny Individuals with Disabilities Full and**

**Equal Access to Defendants' Facilities**

27. As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, or procedures with regard to the alteration, maintenance, and operation of their facilities.

28. Plaintiff is informed and believes, and based thereon alleges that, as a Pizza Hut franchisee pursuant to franchise agreements, Defendants utilize an Operations Manual (the "Manual") issued by the franchisor, and are required to follow all of the agreement's instructions, requirements, standards, specifications, and procedures at each of their locations, including those setting management, administration, and maintenance policies, practices, and procedures related to exterior maintenance, and in keeping the business "in compliance with all applicable laws, rules, regulations and [its] Brand Standards," including compliance with the ADA and the architectural guidelines promulgated under the ADA. Plaintiff is further informed and believes that, pursuant to the franchise agreements, Defendants are required to remain current with restaurant buildings, parking lots, and landscaped area maintenance and/or asset upgrade obligations. Additionally, Plaintiff is informed and believes and based thereon alleges that the Pizza Hut's franchise agreements require periodic remodeling, redecoration, structural changes, and modifications to the restaurants every fifth to tenth year..

29. Plaintiff is further informed and believes and based thereon alleges that, pursuant to the franchise agreements, Defendants are required to designate a "Qualified Operator" to supervise the operation of Defendants' restaurants within designated market areas. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning their maintenance obligations, and

obligations to maintain, repair, and/or replace features within their Parking Areas, through the Qualified Operators, who supervise Area Coaches, who in turn directly supervise Multi-Unit Managers, and then individual restaurant managers. Plaintiff is informed and believes that collectively, these positions constitute the "Qualified Operator" charged with overseeing operations of Defendants' restaurants for compliance with Pizza Hut's policies through regular and complete inspections of Defendants' restaurants.

30. To date, Defendants' centralized alteration, maintenance, and operational policies, practices, or procedures have systematically and routinely violated the ADA by failing to maintain the accessible features of Defendants' facilities, and/or by failing to remove architectural barriers.

31. On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, or procedures, are discriminatory, unreasonable, inadequate, and routinely result in accessibility violations:

- a. 8932 E 38th Street, Indianapolis, IN:

    i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%[1];

    ii. The purportedly accessible curb ramp projected into an access aisle[2] in violation of 36 C.F.R. part 1191, §406.5.

---

[1] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10, i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

[2] Pursuant to the 2010 Standards, curb ramps cannot project into parking spaces or access aisles. *See,* 36 C.F.R. part 1191, § 406.5. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.6, §4.7.8.

iii. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%[3]; and,

iv. A fence around a dumpster occupied half of one of the accessible spaces.

b. 50 Towne Square Way. Pittsburgh, PA:

i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had a slope exceeding 2.1%;

c. 2324 Ardmore Blvd., Pittsburgh, PA:

i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had a slope exceeding 2.1%;

d. 501 Hyde Park Road, Leechburg, PA:

i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had a slope exceeding 2.1% in the space and a slope exceeding 2.1% in the aisle.

ii. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%;

e. 2105 N. Mitthoeffer Road, Indianapolis, IN:

i. The purportedly accessible curb ramp projected into an access aisle in violation of 36 C.F.R. part 1191, §406.5.

ii. A permanent trash container narrowed the accessible route to 24"

f. 3 Old Farm Road, Danville, IN:

i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33% and curb ramp flare slopes exceeding 10.0%;

---

[3] Pursuant to the 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

ii. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had running slope exceeding 2.1%;

g. 3497 W 86th Street, Indianapolis, IN:

   i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had running slope exceeding 2.1%;

h. 6255 E 82nd Street, Indianapolis, IN:

   i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%;

i. 11101 SW Hwy, Palos Hills, IL:

   i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1% and the curb ramp flare with a slope exceeding 10.0%;

j. 701 N. Lake Street, Aurora, IL:

   i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had running slope exceeding 2.1%;

k. 150 Roosevelt Road, West Chicago, IL:

   i. The purportedly accessible curb ramp located on the route to the building entrance had a flare with a slope exceeding 10.0%;

l. 103 Concord Mall Drive, Elkhart, IN:

   i. The purportedly accessible curb ramp projected into an access aisle in violation of 36 C.F.R. part 1191, §406.5;

  ii. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33% and curb ramp flare slopes exceeding 10.0%;

  iii. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

 m. 9160 State Rte 108, Columbia, MD:

  i. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

 n. 10 W Chestnut Hill Lane, Reisertown, MD:

  i. There are no accessible parking spaces or access aisles provided at this location. A 6" high curb across the storefront blocks access.

 o. 600 Ohio Street, Havre de Grace, MD:

  i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had running slope exceeding 2.1%;

 p. 1216 E Churchville Road, Bel Air, MD:

  i. The purportedly accessible curb ramp located on the route to the building entrance had running slope exceeding 8.33% and curb ramp flare slopes exceeding 10.0%;

32. The fact that individuals with mobility-related disabilities are denied full and equal access to so many of Defendants' facilities, and the fact that each of these facilities deny access by way of inaccessible Parking Areas, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, is caused by Defendants' systemic disregard for the civil rights of disabled individuals.

33. Defendants' systemic access violations demonstrate that Defendants either employ policies, practices, or procedures that fail to alter their facilities so that they are readily accessible

and usable, and/or that Defendants employ policies, practices, or procedures that are unable to maintain accessibility.

34. As evidenced by the widespread inaccessibility of Defendants' parking facilities, absent a change in Defendants' existing policies, practices, or procedures, access barriers are likely to reoccur at Defendant's facilities even after they have been remediated.

35. As a result of Defendants' non-compliance with the ADA, Plaintiff has been denied the benefit of, and participation in the full and equal enjoyment of, Defendants' goods, services, facilities, privileges, advantages, or accommodations, and has been treated unequally by Defendants.

36. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify their existing policies, practices, or procedures that have created or allowed, and will continue to create or allow, inaccessibility to affect Defendants' network of facilities.

## JURISDICTION AND VENUE

37. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

38. Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

39. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

40. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any QUALITY HUTS, LLC, QUALITY HUTS INDIANAPOLIS LLC, QUALITY HUTS MIDWEST LLC, and DOES 1 through 10 location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendant's failure to comply with the ADA's slope regulations within the purportedly accessible Parking Areas of their facilities.

41. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

42. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

43. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make their facilities fully accessible and independently usable as above described.

44. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

45. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

## VIOLATION OF THE ADA, TITLE III

## [42 U.S.C. §§ 12101, *et seq.*]

## (Against all Defendants)

46. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

47. At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, *et seq.* was in full force and effect and applied to Defendants' conduct.

48. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendants' conduct.

49. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of mobility. Accordingly, he is an individuals with a disability as defined by the ADA, 42 U.S.C. § 12102(2).

50. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

51. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations," 42 U.S.C. § 12182(a), and prohibits places of public

accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), and from denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. §§ 36.202.

52. Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

53. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

54. Title III and its implementing regulations define discrimination to include the following:

a) Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

b) For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2);

c) Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211; and,

    d) Failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to avoid such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R.§ 36.302(a).

55. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

56. The ADA also provides for specific injunctive relief, which includes the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include . . . modification of a policy . . . to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

57. Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

58. The ADA requires Defendants' facilities to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs. 42 U.S.C. § 12183(a).

59. Further, the ADA requires the accessible features of Defendants' facilities, which include Parking Areas, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 C.F.R. § 36.211.

60. The architectural barriers described above demonstrate that Defendants' facilities were not altered in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs in the first instance, and/or that Defendants' facilities were not maintained or

operated so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

61.     Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

62.     Defendants' repeated and systemic failures to alter their facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

63.     Defendants' facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

64.     Defendants are required to provide individuals who use wheelchairs full and equal enjoyment of their facilities.  42 U.S.C. § 12182(a).

65.     Defendants have failed, and continue to fail, to provide individuals who use wheelchairs with full and equal enjoyment of their facilities.

66.     Defendants have discriminated against Plaintiff and the class in that they have failed to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

67.     Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

68.     Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the Class.

69. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to and independently usable by individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify their policies, practices, or procedures to prevent the reoccurrence of access barriers post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: June 11, 2021 Respectfully Submitted,

*/s/ Noah C. Thomas*
Noah C. Thomas
noah@chapmanlaw.com
CHAPMAN LAW LLC

20 NW 3rd Street, Suite 1410
Evansville, IN 47708
Phone: (812) 426-0600

Benjamin J. Sweet
ben@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Phone: (412) 857-5350

Jonathan D. Miller
jonathan@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
33 W. Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: (805) 963-2345

*Counsel for Plaintiff and the Class*